Filed 10/26/21  Reid v. Rosenberg CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BRIGETTE REID, | B307918 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC512275 |
| v. | |
| SHERYL ROSENBERG, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Judge. Reversed.

Barnhill & Vaynerov, Maxim Vaynerov; Walton & Walton, L. Richard Walton and Javad Navran for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Gary J. Lorch, Don Willenburg; Tuchman & Associates and Aviv L. Tuchman for Defendant and Respondent.

# INTRODUCTION

This is a dispute between two sisters, plaintiff and appellant Brigette Reid and defendant and respondent Sheryl Rosenberg, regarding SD Sheryl Brigette, a limited liability company (the LLC) formed for their benefit by their father, Stanley Diller. Around the time of Diller's death in January 2012, Rosenberg produced an operating agreement purporting to name her as the sole member and sole manager of the LLC, notwithstanding Diller's assignment of his membership interest in the LLC to Rosenberg and Reid in equal shares. Reid filed this action seeking, as pertinent here, declaratory relief concerning ownership and control of the LLC.[1] Specifically, Reid claims the operating agreement produced by Rosenberg is fraudulent and, even if genuine, is invalid.

The trial court granted Rosenberg's motion for summary adjudication of the declaratory relief claim, finding that no triable issues of material fact existed regarding the validity of the operating agreement. The court subsequently granted Rosenberg's second motion for summary adjudication of Reid's remaining claims and entered judgment in favor of Rosenberg.

Reid contends the court erred in summarily adjudicating the declaratory relief claim because a reasonable trier of fact could find that the operating agreement is fraudulent. Specifically, although Rosenberg stated that the operating agreement was prepared by Diller's attorney and signed by her at

---

[1] Reid's complaint includes several other causes of action alleging breaches of fiduciary duty by Rosenberg during her tenure as managing member of the LLC during the past nine years.

Diller's direction in August 2011, Reid produced evidence that the operating agreement was not signed at that time. Further, Reid contends that Rosenberg actually signed the operating agreement near the time of Diller's death in order to take full control of the LLC following his passing.

We agree that disputes of material fact exist regarding the legitimacy of the operating agreement and therefore conclude the court's summary adjudication of the declaratory relief claim is in error. Further, we conclude that even if the operating agreement is not fraudulent, Rosenberg lacked the legal authority to act unilaterally in adopting the LLC's first written operating agreement. And because the court's adjudication of Reid's remaining claims is inextricably intertwined with its findings on the declaratory relief claim, we reverse the judgment in its entirety and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

### 1. The Parties

Diller was a successful real estate investor and businessman. He was diagnosed with pancreatic cancer in May 2011 and died on January 4, 2012.

Diller and his first wife had two daughters, Rosenberg and Reid. Rosenberg is married to Michael.[2] They have four adult children, including Edmundo and Benjamin. Reid has three adult children.

---

[2] We refer to Rosenberg's husband and her sons by their first names to avoid confusion. No disrespect is intended.

3

## 2. The LLC

Diller formed the LLC in August 2011 with the assistance of his attorney, Jance Weberman. Weberman filed articles of organization for the LLC with the Secretary of State. The articles of organization provided that the LLC would be managed by all its members.

Diller funded the LLC with three assets: (1) his 60 percent partnership and corporate interests in Jedamist, which controls the ground lease of a seven-story medical office building just south of Beverly Hills; (2) his 37 percent interest in WDW, a joint venture that owns and operates a convalescent hospital in Downey, and (3) a commercial property in Long Beach. Diller, as trustee of his living trust, executed a grant deed and a series of assignments transferring the assets to the LLC. He also accepted the assignments on behalf of the LLC. Finally, Diller assigned his interest in the LLC, including his membership interest, equally to Rosenberg and Reid. He provided that half of each sister's interest (i.e., a 25 percent interest in the LLC) was to be allocated to her children.[3] The documents effecting these transfers were signed by Diller and notarized on August 23, 2011.

---

[3] The assignment states, in pertinent part, "Subject to the terms and conditions of the Operating Agreement of SD SHERYL BRIGETTE, LLC, a California Limited Liability Company, Stanley Diller, Trustee of the Stanley Diller Living Trust dated November 14, 1995 ("Diller") hereby assigns and transfers separate shares of all Diller's rights, title and interest in SD SHERYL BRIGETTE, LLC, including its membership interest as follows: [¶] 1) 50% to Sheryl Rosenberg, a married woman as her sole and separate property … . One half or 50% of SHERYL ROSENBERG's share shall be divided equally between her children … . [¶] 2) 50% to BRIGETTE MARSHAK REID, a married

Two additional documents bearing the date of August 23, 2011 were produced during this litigation. The first is an acceptance of Diller's assignment of all rights, title and interest in the LLC, which is signed and dated by Rosenberg as the managing member of the LLC. The second is an operating agreement for the LLC "as of August 23, 2011" signed only by Rosenberg and providing that Rosenberg is the sole member and sole manager of the LLC. Neither document is notarized.

## 3. The Probate Litigation and Settlement

After Diller's passing, City National Bank, as trustee of Diller's trust, filed a probate action against the LLC and others who had received assets from Diller just before his death. As pertinent here, the action sought to invalidate Diller's transfer of assets to the LLC and return those assets to the trust in order to fund the payment of estate and gift taxes. The Internal Revenue Service became involved. After several years of extensive litigation, all parties to the probate action entered into a settlement agreement in 2016. Throughout the litigation, Rosenberg acted as the sole managing member of the LLC.

## 4. The Current Litigation

### 4.1. Reid's Complaint

Reid initiated this action in 2013. The operative third amended complaint contains five claims: declaratory relief, breach of fiduciary duty (individually), breach of fiduciary duty

woman as her sole and separate property … . One half or 50% of BRIGETTE MARSHAK REID['s share] shall be divided equally between her children … ."

(derivatively, on behalf of the LLC), accounting and constructive trust, and judicial expulsion.

Pertinent here, Reid's first cause of action seeks declaratory relief that (1) she is a 50 percent owner, member, and manager of the LLC pursuant to Diller's assignment of his interest in the LLC, and (2) the operating agreement signed by Rosenberg only and purporting to give Rosenberg 100 percent of the membership and management responsibilities of the LLC is null and void. Specifically, Reid alleges that Diller assigned his membership interest in the LLC in equal parts to Reid and Rosenberg. And because the articles of organization filed with the Secretary of State in August 2011 stated that the LLC would be managed by all its members, both Reid and Rosenberg are members as well as managing members of the LLC, notwithstanding the operating agreement signed only by Rosenberg which purports to give 100 percent of the LLC's membership to Rosenberg and to name her as the sole managing member of the LLC. Reid further alleges that Rosenberg did not sign the operating agreement at Diller's direction in August 2011, as Rosenberg claims, but rather created the operating agreement at some point near the time Diller died in order to take total control of the LLC after his death.

Reid's other causes of action allege a variety of breaches of fiduciary duty by Rosenberg such as failing to make distributions from the LLC to Reid, taking unauthorized actions on behalf of the LLC, and using LLC funds to pay for expenses relating to other business ventures and personal legal fees.

### 4.2. Summary Adjudication of the Declaratory Relief Claim

Rosenberg filed two motions for summary judgment and/or summary adjudication. The first motion focused largely on the declaratory relief claim but also asserted that all of Rosenberg's actions as managing member of the LLC were both in the best interest of the LLC and its members and were, in any event, entitled to deference under the business judgment rule.

As to the declaratory relief claim, Rosenberg asserted Diller intended that she would be the sole member and manager of the LLC as set forth in the operating agreement prepared by Diller's attorney and approved by Diller. Further, when Diller assigned his interest in the LLC to Rosenberg and Reid, the assignment was made "subject to the terms and conditions of the operating agreement." By virtue of the operating agreement, Rosenberg contended, Reid holds only an "economic interest," not a membership interest, in the LLC. As such, Reid holds no right to vote or manage the LLC.

Reid opposed the motion. Primarily, she argued that the operating agreement signed by Rosenberg was not signed in August 2011, as Rosenberg said. Reid noted that draft operating agreements—drafts providing that Reid and Rosenberg were equal members and managers of the LLC—had been circulated among members of the Rosenberg family in October and December of 2011. Consistent with those drafts, Rosenberg filed a statement of information with the Secretary of State in early December 2011, stating that both Reid and Rosenberg were members and/or managers. Reid also noted that the version of the operating agreement signed by Rosenberg was facially inconsistent with Diller's assignment. By the assignment, the

sisters received equal and identical interests in the LLC from their father. But the operating agreement stripped Reid (as well as her children and Rosenberg's children) of *all* interest in the LLC by giving Rosenberg 100 percent of the membership interest and making no provision for distributions to anyone else.

With respect to her other claims, Reid asserted mainly that Rosenberg improperly used LLC funds to pay attorney's fees relating to personal legal services for herself or other members of her family.

The court granted Rosenberg's motion for summary adjudication with respect to the declaratory relief claim. After reviewing the evidence, including statements by family members and Diller's attorney, the court found that Diller "intended and implemented a plan to have Sheryl Rosenberg to be the sole Managing Member of [the LLC]." Further, the court found "[t]he language [of the assignments] would suggest that both daughters were gifted a membership interest (as well as an economic interest), but the membership interest nonetheless was subject to the provisions in the Operating Agreement. [Fn. omitted.] The Operating Agreement unambiguously establishes a single managing member and designates Rosenberg to be that managing member."

As to Reid's other claims, the court found that the settlement agreement barred Reid from challenging any attorney's fees incurred and paid by the LLC in relation to the probate litigation. The court invited the parties to clarify what other disputed issues existed as to the payment of attorney's fees.

### 4.3. Summary Adjudication of the Fiduciary Duty Claims

Shortly after the court ruled on her first motion for summary adjudication, Rosenberg filed a second such motion focusing on her alleged breaches of fiduciary duty relating to the hiring and payment of attorneys outside the scope of the probate litigation. Rosenberg explained the roles played by four separate law firms after the probate litigation and/or in connection with the present ligation. She also stated that in her professional judgment, each of the firms provided necessary services to the LLC or to her as the managing member of the LLC. Accordingly, her decision to incur the legal fees identified by Reid was entitled to substantial deference under the business judgment rule.

In opposition to the motion, Reid asserted that the primary issue was whether the fees incurred by Rosenberg on behalf of the LLC were reasonable—a question of fact that required a trial. Reid also disputed the necessity and purpose of work by certain law firms, suggesting that the LLC paid for work performed by attorneys who were representing the personal interests of Rosenberg and her family.

Again, the court found in Rosenberg's favor and granted the motion for summary adjudication. The court found Rosenberg was entitled to indemnification under the operating agreement and, further, that her decisions concerning the hiring and payment of law firms were entitled to deference.

### 4.4. Summary Judgment and Appeal

After granting Rosenberg's motions for summary adjudication, the court found that no issues remained to be tried and entered judgment in favor of Rosenberg. Reid timely appeals.

## DISCUSSION

Reid contends primarily that the court erred in granting Rosenberg's motion for summary adjudication on her declaratory relief claim. Specifically, Reid asserts triable issues of material fact exist concerning the validity and effect of the operating agreement, which purports to name Rosenberg as the LLC's sole member and sole managing member. We agree.

### 1.    Standard of Review

The standard of review is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850; Code Civ. Proc., § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler,* at p. 768.) "In performing an independent review of the granting of

10

summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.*)

The appellant has the burden to show error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

**2.    The court erroneously concluded that no material disputed facts exist concerning the creation of the operating agreement.**

   **2.1.    Rosenberg's evidence regarding the validity of the operating agreement shifted the burden to Reid.**

Rosenberg's motion for summary adjudication of Reid's declaratory relief claim asserts that, pursuant to the operating agreement, Rosenberg is the sole member of the LLC as well as its sole managing member. We conclude that Rosenberg presented a prima facie case sufficient to shift the burden to Reid on this issue.

11

As noted, Diller assigned his interest in the LLC, including his membership interest, to Rosenberg and Reid equally. But, Rosenberg notes, the first phrase of the assignment states that the assignment is "subject to the terms and conditions of the operating agreement." And the operating agreement provides that Rosenberg owns 100 percent of the membership of the LLC and is the sole managing member. Rosenberg contends the operating agreement trumps the assignment.

As Rosenberg notes, the operating agreement states that it was made "as of August 23, 2011." In her declaration, Rosenberg attests that the operating agreement was prepared by Diller's lawyer at Diller's request, that it was approved by Diller, and that she signed the operating agreement at Diller's direction in August 2011. Weberman, Diller's lawyer, also stated that Rosenberg signed the operating agreement around that time. In a declaration signed in 2012, Weberman said that Diller, Rosenberg, and Rosenberg's son Edmundo came to his office on August 23, 2011 and Rosenberg signed the operating agreement in his presence. Weberman offered a different account in his 2015 trial testimony in the probate action, when he testified that he prepared the operating agreement, sent it to Rosenberg, and she returned it to him at another time. Although Weberman's statements are slightly different, both Weberman and Rosenberg attested that Diller approved the operating agreement and that Rosenberg signed it at Diller's direction in 2011.

This evidence was sufficient to shift the burden to Reid.

## 2.2. Reid's evidence establishes triable issues of material fact.

Reid contends that Rosenberg did not sign the operating agreement in August 2011 at Diller's direction and, instead,

12

signed the operating agreement near the time of Diller's death. In other words, Reid suggests, even though Diller transferred equal shares of the LLC's membership to his two daughters, Rosenberg unilaterally adopted the operating agreement which purports to give her the entire membership of and total control over the LLC. Viewed in the light most favorable to Reid, the evidence creates triable issues of fact on that point.

Weberman's 2012 declaration, which states that Rosenberg signed the operating agreement in his office on August 23, 2011, also states that Edmundo was present. Edmundo confirms he was present at the meeting but states he did not see any operating agreement during the August 23, 2011 meeting. In addition, all the documents executed by Diller relating to the LLC and its assets were signed and notarized on August 23, 2011 in Weberman's office. But the operating agreement, which Weberman attested was signed in his office on the same day, was signed only by Rosenberg and was not notarized. Rosenberg also signed an acceptance of Diller's transfers on behalf of the LLC. That document is dated August 23, 2011 but, again, it is not notarized. Edmundo's statements, together with the presence of notarization on some documents and the absence of notarization on other, related documents, could support the theory advanced by Reid, namely, that the operating agreement was not signed on August 23, 2011.

It is also significant that in September 2011, Diller, signing as manager of the LLC, attempted to transfer the commercial property from the LLC back to his living trust. But if the operating agreement had been adopted in August 2011, Diller would not have had any authority to act on behalf of the LLC because the operating agreement provides that Rosenberg is the

13

only member and only manager. Both Diller and Weberman would have known this. And although Weberman acknowledges that he prepared the transfer document and related grant deed for Diller's signature, he offers no explanation concerning the obvious conflict between the operating agreement and Diller's attempt to act as manager of the LLC in September 2011.

Both sides also note that Weberman sent a bill to Diller in early October 2011 that included time spent "Drafting: Review Operating Agreement LLC." Weberman also attested that he began preparing the operating agreement at Diller's direction in August 2011. But subsequent discussions among members of the Rosenberg family could suggest that Weberman prepared a draft agreement for the Reid and Rosenberg families to consider and negotiate among themselves. Specifically, in October 2011, Rosenberg's husband Michael (who is a lawyer) sent a draft operating agreement (October draft) to Rosenberg as well as Edmundo and Benjamin. The October draft is very similar to the operating agreement but, notably, it names Rosenberg and Reid as members and managing members in equal shares. In December 2011, Michael circulated a revised draft operating agreement (December draft) which, like the October draft, named both Rosenberg and Reid as equal members and managing members. The December draft also named the Rosenberg and Reid children as members in proportionate shares.

Rosenberg asserts these draft agreements show only that her family members wanted to change the structure and management of the LLC—an idea that was ultimately nixed by Diller. But none of the correspondence between the members of the Rosenberg family about the October draft or December draft makes reference to an existing agreement or management

structure. Moreover, Rosenberg acted in a manner consistent with the October draft and the December draft when, in early December, she filed a statement of information with the Secretary of State listing herself and Reid in the space where the form asked for "manager or managers, or if none have been appointed or elected, provide the name and address of each member."

The timing of subsequent events could also support Reid's theory. According to Reid, Diller suffered a fall in late December 2011, approximately one week before his death, and he never fully recovered his faculties. And after Diller fell, Rosenberg filed a second statement of information, this time listing only herself as member and manager of the LLC.[4] Also in late December 2011 or early January 2012, Rosenberg and her husband presented the signed operating agreement to Benjamin and Edmundo. The children, including Edmundo who had been working with Diller in multiple businesses, were unaware that any operating agreement was in existence.

Based on these facts, a reasonable trier of fact could find in favor of Reid and conclude that the operating agreement signed by Rosenberg was not signed in August 2011 at Diller's direction. Accordingly, the court erred in finding that no disputed facts existed regarding the validity of the operating agreement.

---

[4] Rosenberg's brief asserts this second statement of information was a "corrected" version. No evidence in the record supports that assertion.

3. **The court also erred in impliedly finding that Rosenberg could unilaterally adopt the LLC's first written operating agreement.**

In granting Rosenberg's first motion for summary adjudication, the court found that Diller intended Rosenberg to be the sole managing member. The court also found, impliedly, that the operating agreement signed only by Rosenberg validly effectuated Diller's intent by eliminating Reid's membership interest. Reid argues that even if the operating agreement was created and approved by Diller, Rosenberg was not empowered under the Corporations Code[5] to act alone in adopting the LLC's first operating agreement. We agree.

As noted, Diller "assign[ed] and transfer[red] separate shares of all Diller's rights, title and interest in SD Sheryl Brigette, LLC, including its membership interest" to Reid and Rosenberg in equal (50 percent) shares, provided that one half of each sister's share "shall be divided equally between her children." Former section 17001, subdivision (z), defined "membership interest," as "a member's rights in the limited

---

[5] The Legislature substantially amended the statutory provisions governing limited liability companies in 2012, effective January 1, 2014. (Stats. 2012, ch. 419, § 20; § 17713.13 [effective Jan. 1, 2014]; *Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1485–1486 [explaining repeal of former section 17000 et seq. (codified in title 2.5 of the Corporations Code) and enactment of section 17701.01 et seq., (codified in title 2.6 of that code)].) We are concerned, however, with events that took place in 2011 and which are therefore governed by the statutory provisions in effect at that time. All code references in this section are to the former code provisions in effect prior to January 1, 2014.

16

liability company, collectively, including the member's economic interest, any right to vote or participate in management, and any right to information concerning the business and affairs of the limited liability company provided by this title." Reid contends, therefore, that Diller transferred two separate but identical membership interests in the LLC which, under former section 17001, included economic interests as well as management and voting rights.

Rosenberg contends that the operating agreement eliminated Reid's membership interest and left her (as well as all Diller's grandchildren) with bare "economic interests" in the LLC. But the operating agreement does not make any provision for payments to nonmembers. Instead, it vests 100 percent of the LLC's ownership (together with all rights to distributions) in Rosenberg. It is therefore unclear when and how the "economic interests" purportedly held by Reid and all the grandchildren were created and, aside from citing the operating agreement, Rosenberg does not address the issue. She notes, however, that former section 17001, subdivision (n), defines an economic interest as "a person's right to share in the income, gains, losses, deductions, credit, or similar items of, and to receive distributions from, the limited liability company, but does not include any other rights of a member, including, without limitation, the right to vote or to participate in management … ." But even if a person, such as a creditor or an heir of a member, could obtain a bare economic interest in an LLC, that does not shed any light on *how* or *when* that result could have been lawfully accomplished here.

Timing is also a problem for Rosenberg. Prior to Diller's assignment, Rosenberg had no authority to adopt an operating agreement for the LLC. There is simply no evidence she was a

17

manager of the LLC before she received a membership interest through Diller's assignment. And after the assignment, *both* Reid and Rosenberg were vested with the power to adopt an operating agreement under former section 17059, which provided that "[t]he power to adopt, alter, amend, or repeal the operating agreement of a limited liability company shall be vested in the members." It is unclear, then, *when* Rosenberg could have been legally authorized to act alone in adopting an operating agreement, as she contends.

Former section 17005 provided that relations among and between members of an LLC were generally governed by the articles of organization and operating agreement, if any.[6] (§ 17005, subd. (a).) But former section 17151, subdivision (b), provided that the articles of organization define the management structure for the LLC: "If the limited liability company is to be managed by one or more managers and not by all its members, the articles of organization shall contain a statement to that effect. Neither the names of the managers nor the number of managers need be specified in the articles of organization, but if management is vested in only one manager, the articles of organization shall so state." Here, however, the articles of organization provide that the LLC shall be managed by "all [LLC] member(s)" which, by virtue of Diller's assignment, included both Rosenberg and Reid.

Rosenberg's counterarguments are misdirected. For example, she cites former section 17151, subdivision (a), which provided that an LLC could be managed by one or more

---

[6] Relations were otherwise governed by the Corporations Code.

managers who could be, but were not required to be, members of the LLC. That subdivision is inapposite, however. Rosenberg also notes that a "member" was defined as someone "admitted to a limited liability company as a member in accordance with the articles of organization or operating agreement." (Former § 17001, subd (x).) Rosenberg then asserts that she is the only member of the LLC because Reid was never admitted to the LLC as provided in the operating agreement. But that argument makes no sense. There is no evidence Rosenberg was admitted to the LLC either. Because Rosenberg and Reid received identical rights in the LLC from Diller at the same time, either both of them needed to be admitted—or neither needed to be admitted.

Common sense dictates that when an LLC is comprised of two equal members, neither member could lawfully eliminate the other member's interest by unilaterally adopting an operating agreement to that effect. So does the Corporations Code. The court erred in concluding otherwise.

4. **The court erred in concluding that the settlement agreement in the probate action bars Reid from challenging the attorney's fees paid for work relating to the probate action.**

Because the court's summary adjudication of Reid's fiduciary duty claims was based upon the conclusions the court reached in relation to the declaratory relief claim, including its findings that the operating agreement is valid and Rosenberg's actions were performed in her role as the LLC's managing

member, we must reverse the judgment in its entirety.[7] We note, however, an error by the trial court that should be corrected upon remand.

The court previously concluded that the parties' settlement agreement in the probate action estops Reid from challenging Rosenberg's actions during the probate litigation, including her decision to retain multiple law firms in addition to those paid for by the LLC's insurance. The court erred. The settlement agreement expressly excludes the claims at issue in the present action from the settlement, with the exception of the parties' agreement relating to the distribution of LLC funds available at that time.

---

[7] Similarly, the "business judgment rule" did not entitle Rosenberg to summary adjudication of those claims because judicial review of her "actions raises various issues of fact, e.g., whether [she] acted as an ordinarily prudent person under similar circumstances, and in the best interests of [the LLC]; and whether … she made a reasonable inquiry as indicated by the circumstances. Such questions generally should be left to a trier of fact." (*Gaillard v. Natomas Co.* (1989) 208 Cal.App.3d 1250, 1267–1268.)

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Appellant Brigette Reid shall recover her costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.